UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

BRIAN RENE WADDELL,

   Plaintiff,

v.

EASTERN CORRECTIONAL
INSTITUTION,
WARDEN WALTER WEST,
MEDICAL DEPARTMENT DIRECTOR
DR. JASON CLEM,
MARGE AMODEI and
NURSE WILLETT,

   Defendants.

Civil Action No. TDC-19-0232

## MEMORANDUM OPINION

Plaintiff Brian Rene Waddell, an inmate confined at the Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed a civil action against Defendants ECI, ECI Warden Walter West, Dr. Jason Clem, Nurse Marge Amodei, and Nurse Willett, which the Court construes as alleging negligence and a claim under 42 U.S.C. § 1983 for the denial of adequate medical care in violation of the Eighth Amendment to the United States Constitution. Waddell's claim arises from his allegation that on August 28, 2018, his prescription for Elavil, also known as amitriptyline, was improperly discontinued, causing him to be severely ill for two months.

Pending before the Court are a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendants ECI and Warden West (collectively, "the Correctional Defendants"), and a separate Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendants Dr. Jason Clem and Nurse Marge Amodei (collectively, "the

Medical Defendants"). Nurse Willett has not been served in this case. Waddell was advised of his right to file memoranda in opposition to the Motions but has failed to do so. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motions will be GRANTED.

## BACKGROUND

Waddell suffers from migraine headaches, depression, and a number of other medical conditions. For over 10 years, Waddell was prescribed the medications Elavil and Celexa to address his depression. These prescriptions were periodically renewed by mental health providers, including on December 6, 2017 and April 12, 2018.

On July 28, 2018, Waddell had an electrocardiogram ("ECG") which was abnormal, showing a prolonged "Q-T interval." Med. Records at 14, Med. Defs. Mot. Dismiss Ex. 1, ECF No. 18-4. According to Dr. Clem, a physician at ECI who has reviewed Waddell's medical records, Long QT syndrome ("LQTS") is a disorder of the heart's electrical system. "When the Q-T interval is longer than normal, it increases the risk for torsade de pointes, a life threatening form of ventricular tachycardia." Clem Aff. ¶ 7, Med. Defs. Mot. Dismiss Ex. 2, ECF No. 18-5. LQTS is rare and can be congenital or acquired. Dr. Clem asserts that acquired LQTS "is caused by many medications, including amitriptyline" (Elavil). *Id.*

On August 28, 2018, medical staff alerted Waddell's mental health providers of the prolonged Q-T reading. Waddell's Elavil prescription was discontinued that day in light of its association with prolonged Q-T. The following day, Dr. Paul Matera updated Waddell's chart with a Q-T "alert." Med. Records at 22. According to Dr. Clem, once Waddell had a prolonged Q-T interval, the potential for a fatal arrythmia necessitated the immediate stoppage of Elavil. In

2

Dr. Clem's view, the risk of a lethal cardiac event outweighed the risk in antidepressant withdrawal symptoms, which are usually mild and last 1-2 weeks.

On September 1, 2018, a follow-up ECG administered to Waddell had normal readings. On September 17, 2018, Waddell submitted a sick call request complaining that he was nauseated and vomiting, and that his symptoms began when his Elavil prescription was discontinued. He was seen the same day by a nurse at sick call who characterized his condition as Elavil withdrawal. She advised him on a limited diet and directed him to submit another sick call request if his symptoms continued.

Waddell was seen by a nurse on September 25, 2018 for continued complaints of nausea. He informed the nurse that he had been taking Elavil for 25 years to treat migraine headaches, not depression. He reported that he lost 30 pounds in two weeks and only wanted to lie down. Waddell's medical records reflect that he had lost 15 pounds over two months. The nurse contacted Waddell's mental health provider, who reported that the Elavil had been stopped due to Waddell's cardiac status. A nurse practitioner prescribed Phenergan, an anti-nausea medication, and directed that Waddell be allowed feed-in status and bed rest for two weeks.

On October 1, 2018, Waddell filed another sick call request complaining that he was still nauseous and had lost 30 pounds. He was seen by a mental health nurse practitioner on October 5, 2018. During that visit, Waddell acknowledged that he had not been taking Celexa because it had been out of stock and stated that he was unaware that he had been prescribed Phernagan. The nurse practitioner informed him that his failure to take Celexa could be causing his gastrointestinal issues. Once it was confirmed that Celexa was available at the pharmacy, Waddell agreed to take a reduced dose of Celexa, but on October 18, 2018, he asked that his prescription for Celexa be

3

discontinued. According to Dr. Clem, Waddell's gastrointestinal symptoms were more likely related to his failure to take Celexa than withdrawal from the stoppage of Elavil.

On March 4, 2019, Waddell was seen by a nurse practitioner. Waddell's Elavil and other mental health medications remained discontinued. Although Waddell continues to have chronic migraine headaches and stated that he does not feel like eating meals sometimes, he reported that he was feeling well without the medications.

## DISCUSSION

In his Complaint, Waddell alleges that Defendants were negligent when they abruptly halted his Elavil prescription, which caused him to become seriously ill with nausea and other symptoms. The Court construes the Complaint as alleging both negligence and an Eighth Amendment claim based on deliberate indifference to a serious medical need.

### I. Motion for Appointment of Counsel

Waddell seeks the appointment of counsel, citing his lack of knowledge of the law. In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Upon consideration of Waddell's filings, the Court finds that Waddell has demonstrated the ability either to articulate the legal and factual basis of his claims himself or to

4

secure meaningful assistance in doing so. The Court also finds that, at this stage of the proceedings, there is no need for discovery, expert witnesses, or a hearing. The Motion for Appointment of Counsel will therefore be denied.

## II.     Motions to Dismiss or, in the Alternative, Motions for Summary Judgment

In their Motions, Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Specifically, the Correctional Defendants argue that ECI is entitled to Eleventh Amendment immunity, that Warden West is not liable because he was not personally involved in the alleged wrongdoing, that Waddell has failed to exhaust administrative remedies, that the Correctional Defendants are entitled to qualified immunity, and that Waddell has failed to state a plausible claim for relief. The Medical Defendants argue that Waddell's negligence claim fails because he did not exhaust administrative remedies, that they cannot be held liable on any § 1983 claim based on *respondeat superior* or vicarious liability, and that Waddell has failed to state a plausible claim for relief. Defendants also argue that they are entitled to summary judgment because the record evidence establishes as a matter of law that they were not deliberately indifferent to his serious medical needs.

### A.     Legal Standards

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most

favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the titles of Defendants' Motions. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent document, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Waddell has not asserted that he needs discovery in order to address the Motions. The Court therefore will construe Defendants' Motions as motions for summary judgment for purposes of those arguments that require consideration of the submitted evidence.

Under Rule 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. The Correctional Defendants

Waddell's claim against ECI fails because it is barred by Eleventh Amendment immunity. Under the Eleventh Amendment to the Constitution, absent consent, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a) (LexisNexis 2014), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99. Thus Waddell's claims against ECI, a state agency, is barred by the Eleventh Amendment and will be dismissed.

Waddell's claims against Warden West also fail. In the Maryland prison system, inmate medical care is provided by privately contracted medical care providers. There are no allegations

and no facts supporting the claim that Warden West, who is not a licensed health care provider, had any personal involvement in the decisions relating to the medical care of Waddell or any other ECI inmate. Indeed, there is no allegation or evidence that Warden West or any correctional officer prevented Waddell from seeing medical professionals. Moreover, in his declaration, West states, without dispute, that he has no authority to make decisions relating to an inmate's medical care or to order the medical staff to prescribe any particular medication or perform any particular medical procedure. Thus, Waddell has not stated a valid claim of direct or vicarious liability against Warden West for negligence in the provision of medical care. As to any § 1983 constitutional claim, it is firmly established that the doctrine of vicarious liability, or *respondeat superior*, does not apply to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Accordingly, where Warden West had no personal involvement in the medical decisions, and was not even the supervisor of any of the medical personnel, he cannot be found liable under § 1983 for a constitutional violation. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

To the extent that Waddell arguably has a claim arising from Warden West's response to Waddell's ARPs complaining about this episode, Warden West actually granted one of the ARPs in part and acknowledged that there was a delay in having Waddell see mental health providers about the discontinued medication. Where there is no evidence that Warden West was aware of any delays before they occurred, there is no plausible claim of negligence or a constitutional violation against Warden West. Regardless, any claim against Warden West would fail for the same reasons that the claims against the Medical Defendants fail. *See infra* part II.C. The Court therefore need not address the Correctional Defendants' additional arguments in support of their Motion and will grant the Correctional Defendants' Motion.

8

### C. The Medical Defendants

Waddell has alleged common law negligence and a violation of the Eighth Amendment arising from the decision to discontinue his Elavil prescription. A negligence claim based on medical care, however, is a malpractice claim that, under Maryland law, Waddell may assert only if he can demonstrate that he exhausted administrative remedies by first presenting it to the Maryland Health Care Alternative Dispute Resolution Office. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 3-2A-10 (LexisNexis 2013); *Wilcox v. Orellano*, 115 A.3d 621, 625 (Md. 2015); *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (holding that this requirement applies to medical malpractice claims filed in state or federal court). Here, there is no basis to conclude that Waddell satisfied this requirement. Accordingly, Waddell's negligence claim must be dismissed.

As for any constitutional claim, the Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure that the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted).

9

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Assuming that Waddell had a serious medical need that led to his prescription for Elavil, the record does not support a finding that Defendants acted with deliberate indifference to that need. The undisputed medical records establish that Waddell's prescription for Elavil was abruptly stopped due to his abnormal ECG, which identified the risk that Elavil could be causing a prolonged Q-T that could lead to a life-threatening cardiac incident. While none of the named Defendants actually ordered the discontinuation of that medication, the decision to discontinue Elavil was a reasonable medical decision even considering the potential for some withdrawal

symptoms from the abrupt stoppage and thus does not support a finding of deliberate indifference. *Scinto*, 841 F.3d at 225. Although the fact that Waddell received a normal ECG on September 1, 2019 raises the question whether he could have been reconsidered for Elavil after that test result, it is not clear that a new prescription for Elavil would have addressed his symptoms, as Dr. Clem has provided the medical opinion that they were more likely caused by his failure to take Celexa. Regardless, when Waddell complained of nausea and weight loss which he attributed to the stoppage of Elavil, he was promptly seen by medical staff who prescribed anti-nausea medication and ordered accommodations allowing him to rest and receive meals in his cell. Accordingly, the evidence does not support a finding that any medical providers, including Defendants, subjectively disregarded Waddell's medical condition and acted with deliberate indifference to his medical needs. The Court will therefore grant summary judgment on Waddell's constitutional claims. The Court need not and does not address the Medical Defendants' remaining arguments.

Although Nurse Willett has yet to be served, where the Court's analysis applies equally to her, the claim against Nurse Willett will be dismissed pursuant to 28 U.S.C. § 1915A.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss or, in the Alternative, Motions for Summary Judgment will be GRANTED. The Complaint will be DISMISSED as to Defendant Nurse Willett. A separate Order shall issue.

Date: September 10, 2020

THEODORE D. CHUANG
United States District Judge